**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**CHRISTOPHER COX,**                )
                                                        )
            **Petitioner,**                    )
                                                        )            **CIVIL ACTION NO. 2:23-00577**
**v.**                                                )
                                                        )
**DONNIE AMES, Superintendent,**    )
                                                        )
            **Respondent.**                    )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion to Dismiss Petition (Document No. 10), filed on October 31, 2023. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion to Dismiss Petition (Document No. 10).

## PROCEDURE AND FACTS

1.      **Criminal Action No. 12-F-77:**

While serving a sentence for second-degree murder and robbery in Case No. 05-F-1, Petitioner got into a physical altercation with another inmate at Mount Olive Correctional Complex ("MOCC") on September 24, 2011. (Document No. 10-13.) The inmate died from traumatic brain injury as a result of the physical altercation with Petitioner. (Id.) On May 10, 2012, the Grand Jury of Fayette County, West Virginia, returned an Indictment against Petitioner charging him with one count of first-degree murder. (Document Nos. 10-1 and 10-3.) Following a jury trial, Petitioner was convicted of first-degree murder on May 14, 2013. (Document No. 10-4.) By Order entered

on June 26, 2013, the Circuit Court sentenced Petitioner to life imprisonment without the possibility of parole. (Document No. 10-5.)

On July 29, 2013, Petitioner, by counsel, filed his Notice of Appeal. (Document No. 10-1.) In his Petition for Appeal, Petitioner argued that the trial court erred by the following: (1) Abusing its discretion by requiring defense witnesses to testify by video conference because no statute or rule allowed video testimony at trial; and (2) Committing plain error by allowing defense witnesses to testify in shackles. (Document Nos. 10-2 and 10-6.) Respondent filed a Response Brief on February 20, 2014, and Petitioner filed his Reply Brief on March 12, 2014. (Document Nos. 10-7 and 10-8.) By Memorandum Opinion entered on October 2, 2014, the Supreme Court of Appeals of West Virginia ("SCAWV") affirmed Petitioner's conviction and sentence. (Document No. 10-2.) Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

**2.     First State *Habeas* Proceeding:**

On June 5, 2015, Petitioner, acting *pro se*, filed in the Circuit Court of Fayette County his first Petition for Writ of *Habeas* Corpus. (Document Nos. 10-10 and 10-11.); Cox v. Ames, Case No. 15-C-153 (Cir. Ct. Fayette Co. Dec. 15, 2015). As grounds for relief, Plaintiff asserted twelve grounds of ineffective assistance of counsel. (Document No. 10-11.) Specifically, Plaintiff argued that trial counsel was ineffective based on the following: (1) Counsel failed to object to Petitioner's witnesses testifying in shackles, handcuffs, and prison clothing; (2) Counsel "failed to file any motions before the trial court prior to his witnesses testifying at trial to not be allowed to wear civilian clothing and without being shackled and handcuffed;" (3) Counsel failed to object to Petitioner's witnesses being forced to testify with correctional officers standing behind them during trial and over the video feed from MOCC; (4) Counsel "failed to object during trial while Petitioner's witnesses were testifying [because] Petitioner was unable to view the screen upon

2

which his witnesses were testifying;" (5) Counsel "failed to object to Petitioner being forced to wear a stun-belt throughout the entire trial and in front of the jurors;" (6) Counsel misstated the plea offer, which caused Petitioner to reject the plea offer; (7) Counsel "failed to file any motions to suppress the State's evidence of the video of the crime scene that was shown during the trial and during the state correctional officers' testimony that mislead the jury;" (8) Counsel "failed to show Petitioner any discovery evidence that was given by the State, especially the video of the crime scene and other evidence used by the State during trial;" (9) Counsel "failed to object to the Court's Instruction # 2, which took away Petitioner's self-defense claim;" (10) Counsel "failed to object or say anything to the trial court judge on the use of the stun-belt in front of the jury and the effect it would have on them verses the prejudice of a tainted jury;" (11) Counsel "failed to object to the reading of the Indictment of Petitioner to the potential jury members during jury selection;" and (12) Counsel "failed to address the issue of 'mercy' in any way and allowing the jury to believe that they had no role in determining mercy." (Id.) By Order entered on August 28, 2015, the Circuit Court directed the State to file an Answer. (Document No. 10-10.) On November 30, 2015, the State filed its Response to Petitioner's Petition. (Document No. 10-12.) On December 15, 2015, the Circuit Court entered an "Order Summarily Denying and Dismissing Petition." (Document No. 10-13.) Petitioner did not appeal to the SCAWV. (Document No. 10-10.)

**3.      Second State *Habeas* Proceeding:**

On September 6, 2018, Petitioner, acting *pro se*, filed in the Circuit Court of Fayette County his second Petition for Writ of *Habeas Corpus*. (Document Nos. 10-14 and 10-15); Cox v. Ames, Case No. 18-C-161 (Cir. Ct. Fayette Co. Dec. 15, 2015). On December 12, 2018, the Circuit Court appointed *habeas* counsel for Petitioner. (Document No. 10-14.) A Motion to Withdraw as Counsel was later filed, and new *habeas* counsel was appointed on July 11, 2019. (Id.) On

November 25, 2019, Petitioner, by counsel, file an Amended Petition. (Document No. 10-14 and 10-16.) The State filed its Answer on February 28, 2020. (Document No. 10-17.) The Circuit Court conducted an omnibus hearing on August 17, 2020. (Document No. 10-14.) On February 24, 2021, the Circuit Court entered its "Order Denying Habeas Corpus Relief and Dismissing Petition." (Document No. 10-18.)

On March 26, 2021, Petitioner filed his Notice of Appeal. (Document No. 10-14.) Petitioner, by counsel, filed his appeal Brief on September 3, 2021. (Document No. 10-19.) Respondent's Brief was filed on October 18, 2021. (Document No. 10-21.) By Memorandum Decision filed on August 31, 2022, the SCAWV affirmed the Circuit Court's denial of *habeas* relief. (Document No. 10-20.) The mandate was issued on October 3, 2022. (Document No. 10-22.)

**4.      Instant Section 2254 Petition:**

On August 28, 2023, Petitioner, acting *pro se*, filed the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody.[1] (Document No. 2.) As grounds for *habeas* relief, Petitioner alleges the following:

1.      Petitioner's due process rights under the Sixth Amendment to the United States Constitution were violated when the trial court forced Petitioner's witnesses to testify in prison garb while in handcuffs and shackles.

2.      Petitioner's due process rights under the Sixth Amendment to the United States Constitution were violated when the trial court forced Petitioner to wear a stun-belt despite the fact that Petitioner had no outbursts or disruptive behavior in the Court and the stun-belt was visible to the jurors.

(Id.) As relief, Petitioner requests that his "conviction be vacated, the sentence imposed voided,

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

4

and the case be remanded back to the Circuit Court of Fayette County, West Virginia with instruction that he be given a new trial." (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of State v. Cox, 2014 W.Va. LEXIS 995 (Oct. 2, 2014) (Document No. 2-1.); and (2) A copy of Cox v. Ames, 2022 W.Va. LEXIS 522 (Aug. 31, 2022) (Document No. 2-2.).

By Order entered on September 26, 2023, the undersigned directed Respondent to file a limited Response addressing the timeliness of Petitioner's Petition and "include copies of Court and other records which would facilitate determination of the timeliness of Petitioner's Petition." (Document No. 8.) On October 31, 2023, Respondent filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 10 and 11.) In support, Respondent argues as follows: (1) "Petitioner's Section 2254 petition was filed more than one year after the expiration of the limitation period" (Document No. 11, pp. 5 – 7); and (2) "Petitioner has not demonstrated that he is entitled to equitable tolling of the one-year limitation period" (Id., pp. 7 – 9).

As Exhibits, Respondent attaches the following: (1) A copy of the Docket Sheet from Case No. 12-F-77 (Document No. 10-1); (2) A copy of State v. Cox, 2014 WL 4930264 (W.Va. Oct. 2, 2014) (Document No. 10-2); (3) A copy of Petitioner's Indictment as filed in Case No. 12-F-77 (Document No. 10-3); (4) A copy of Petitioner's Conviction Order as filed in Case No. 12-F-77 (Document No. 10-4); (5) A copy of Petitioner's Sentencing and Commitment Order as filed in Case No. 12-F-77 (Document No. 10-5); (6) A copy of Petitioner' Direct Appeal Brief as filed in Case No. 13-0778 (Document No. 10-6); (7) A copy of Respondent's Brief as filed in Case No. 13-0778 (Document No. 10-7); (8) A copy of Petitioner's Reply Brief as filed in Case No. 13-0778 (Document No. 10-8); (9) A copy of the SCAWV Mandate as filed in Case No. 13-0778 (Document No. 10-9); (10) A copy of the Docket Sheet from Case No. 15-C-153 (Document No. 10-10); (11) A copy of Petitioner's Petition as filed in Case No. 15-C-153 (Document No. 10-11);

(12) A copy of the State's Response to Habeas Petition as filed in Case No. 15-C-153 (Document No. 10-12); (13) A copy of the Circuit Court's "Order Summarily Denying and Dismissing Petition" as filed in Case No. 15-C-153 (Document No. 10-13); (14) A copy of the Docket Sheet for Case No. 18-C-161 (Document No. 10-14); (15) A copy of Petitioner's State *habeas* Petition as filed in Case No. 18-C-161 (Document No. 10-15); (16) A copy of Petitioner's Amended State *habeas* Petition as filed in Case No. 18-C-161 (Document No. 10-16); (17) A copy of Respondent's Answer as filed in Case No. 18-C-161 (Document No. 10-17); (18) A copy of the Circuit Court's "Order Denying Habeas Corpus Relief and Dismissing Petition" as filed in Case No. 18-C-161 (Document No. 10-18); (19) A copy of Petitioner's *habeas* appeal Brief as filed with the SCAWV in Case No. 21-0251 (Document No. 10-19); (20) A copy of Cox v. Ames, 2022 WL 3924304 (W.Va. Aug. 31, 2022) (Document No. 10-20); (21) A copy of Respondent's Brief as filed with the SCAWV in Case No. 21-0251 (Document No. 10-21); and (22) A copy of the SCAWV's Mandate as filed in Case No. 21-0251 (Document No. 10-22).

Also on October 31, 2023, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion to Dismiss Petition. (Document No. 12.) On December 20, 2023, following the granting of an extension of time, Petitioner filed his Response in Opposition and Exhibits in Support. (Document Nos. 16 and 16-1.) In his Response, Petitioner concedes that the one-year statute of limitations has expired. (Document No. 16.) Petitioner, however, argues that he is entitled to equitable tolling because he was housed in segregation. (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of MOCC's Law Library "Legal Request Form" (Document No. 16-1, pp. 1 – 2); (2) A copy of the West Virginia Division of Corrections and Rehabilitation's ("WVDOC") Operational Procedure No. 319 concerning "Procedures for Control Unit Operation" (Id., pp. 3 – 18); (3) A

copy of the WVDOC's Operational Procedure No. 323 concerning "Special Management Procedures" (Id., pp. 19 – 22); (4) A copy of the WVDOC's Operational Procedure No. 324 concerning "Conditions of Confinement and Quality of Life" (Id., pp. 23 – 30); (5) A copy of the WVDOC's Operational Procedure No. 507 concerning "Library Program and Services" (Id., pp. 31 – 41); (6) A copy of the WVDOC's Policy Directive No. 326.00 concerning "Segregation Units (Administrative & Punitive)" (Id., pp. 42 – 51); and (7) A copy of the WVDOC's Policy Directive No. 329.00 concerning "Law Libraries" (Id., pp. 52 – 54).

On January 5, 2024, following the granting of an extension of time, Respondent filed his Reply arguing that Petitioner was not entitled to equitable tolling and his Petition should be dismissed as untimely. (Document No. 20.)

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim

7

for relief, the court must consider "the face of the petition any attached exhibits." <u>Wolfe</u>, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. <u>Walker</u>, 589 F.3d at 139.

## ANALYSIS

**1.    Timeliness:**

In his Motion, Respondent argues that "Petitioner's Section 2254 petition was filed more than one year after the expiration of the limitation period." (Document No. 10 and Document No. 11, pp. 5 – 7.) Specifically, Respondent explains that the one-year limitations period began to run on January 3, 2015, which was 90 days after the SCAWV issued its Memorandum Decision affirming Petitioner's conviction and sentence. (Document No. 11, pp. 6 – 7.) Respondent states that the statute of limitations continued to run until June 5, 2015, which is the day Petitioner filed his State *habeas* petition. (<u>Id.</u>, p. 7.) At this point, Respondent explains that Petitioner had used 153 days of his one-year statute of limitation period. (<u>Id.</u>) Respondent notes that the Circuit Court denied Petitioner's Petition on December 15, 2015 and Petitioner did not file an appeal to the SCAWV, and therefore the "statute of limitations resumed on April 15, 2016 – 120 days[2] after the Circuit Court's December 15, 2015 order." (<u>Id.</u>) Respondent contends that "Petitioner's remaining 212 days in the one-year statute of limitations to file a Section 2254 petition in the United States District Court expired on November 14, 2016, unless he sought further post-conviction relief from the State courts that would toll the remaining time." (<u>Id.</u>) Respondent asserts that "Petitioner did

---

[2] Rule 5(f) of the West Virginia Rules of Appellate Procedure states that an appeal must be perfected within four months, not 120 days.

not file his subsequent State *habeas* petition until September 6, 2018, which was over 650 days, or nearly two years, after the one-year limitation period expired." (Id.) Respondent, therefore, concludes that Petitioner's Section 2254 Petition is clearly untimely. (Id.)

In Response, Petitioner concedes that his Section 2254 Petition is untimely under 28 U.S.C. § 2244(d)(1). (Document No. 16.) Specifically, Petitioner states that he "agrees with the Respondent's timeline of the case and cannot refute that the one-year statute of limitations under the AEDPA has long since ran." (Id., p. 4.) In Reply, Respondent merely notes that Plaintiff concedes "that the one-year statute of limitations has long expired." (Document No. 20, p. 1.)

In 1996, Congress enacted the AEDPA, which established a one-year period of limitations governing the filing of Section 2254 *habeas* petitions. The one-year period runs from the latest of one of four specified events:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The undersigned will consider the timeliness of Petitioner's Petition under Section 2244(d)(1)(A).[3] Section 2244(d)(1)(A) provides that Section 2254 *habeas* petitions must be filed

---

[3] Petitioner does not allege any impediments to filing, a newly recognized right, or a newly discovered fact that would

within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If the Petitioner does not petition for a Writ of Certiorari in the United States Supreme Court upon the denial of direct review in the highest State Court, then the one-year limitations period begins to run 90 days after judgment is entered in the highest State Court (i.e., when the period for filing a petition for a Writ of Certiorari in the United States Supreme Court expires). See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000).

Petitioner's conviction and sentence were affirmed by the SCAWV on October 2, 2014. Petitioner did not file a Petition for Writ of Certiorari in the United States Supreme Court, and therefore his conviction became final under 28 U.S.C. § 2244(d)(1)(A) on January 2, 2015 (90 days after the SCAWV affirmed his conviction and sentence). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure,[4] the one-year statute of limitations began to run on January 3, 2015, and Petitioner had until January 2, 2016, to file a Section 2254 Application in the United States District Court, *unless* he first sought post-conviction relief from the State Courts.

Petitioner filed his first State *habeas* Petition on June 5, 2015, 153 days after the statute of limitations period began to run. Accordingly, the one-year statute of limitations period was tolled by Petitioner's State *habeas* proceedings. The Circuit Court of Fayette County denied his *habeas*

---

implicate the provisions of 28 U.S.C. § 2244(d)(1)(B) – (D).

[4] Rule 6(a) of the Federal Rules of Civil Procedure provides in part, as follows:
> **(a) Computing Time.** The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>> **(1) Period Stated in Days or a Longer Unit.**
>> When the period is stated in days or a longer unit of time:
>>> **(A)** exclude the day of the event that triggers the period;
>> **(B)** count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>> **(C)** include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

petition on December 15, 2015, and Petitioner had four months to file his appeal to the SCAWV. See Rule 5(f) of the West Virginia Rules of Appellate Procedure. Petitioner, however, did not file an appeal of the Circuit Court's Order denying *habeas* relief to SCAWV. The limitations period thus began to run again on April 16, 2016, and Petitioner had until November 14, 2016,[5] to file a Section 2254 Petition in the United States District Court, *unless* he again sought post-conviction relief from the State courts. The one-year limitations period, however, expired on November 14, 2016, as Petitioner did not have a State *habeas* petition pending at any time between April 16, 2016 through November 14, 2016. Petitioner filed his instant Section 2254 Petition on August 28, 2023, nearly 7 years and 4 months after the expiration of the limitations period. Therefore, the undersigned finds that Petitioner's Section 2254 *habeas* Petition was filed outside the limitations period under 28 U.S.C. § 2244(d).

**2.      Equitable Tolling:**

In his Petition, Petitioner states that his Petition "is not timely due to circumstances beyond Petitioner's control which will demonstrate the granting of equitable tolling." (Document No. 2, p. 8.)

In Respondent's Motion, he argues that "Petitioner has not demonstrated that he is entitled to equitable tolling of the one-year period." (Document No. 11, pp. 7 – 9.) Specifically, Respondent states that "Petitioner has failed to meet his burden of demonstrating that he had been pursuing his rights diligently, and that some extraordinary circumstances stood in his way, preventing him from timely filing his Section 2254 Petition." (Id., p. 8. ) Respondent explains that "Petitioner offers no reason for his untimely filing other than contending there are 'circumstances beyond Petitioner's

---

[5]   Petitioner had 212 days remaining to file his Section 2254 Petition. 212 days from April 16, 2016, was November 14, 2016. Thus, Petitioner had until November 14, 2016, to file his Section 2254 Petition.

control which will demonstrate the granting of equitable tolling,' but does not assert what circumstances existed." (Id.) Respondent claims that the foregoing fails to show what extraordinary circumstance prevented his timely filing and "[s]imply stating a self-serving conclusory statement does not make such conclusion fact." (Id.)

In Response, Petitioner states that he "disagrees with Respondent's proffer that equitable tolling is not available as he has lost his ability to challenge his State court conviction in the Federal court due to no fault of his own and encountered several roadblocks preventing him from timely filing the instant Petition." (Document No. 16, p. 4.) Petitioner explains that "[d]uring all relevant time periods, from the inception of the criminal charges all the way through the direct appeal and habeas corpus, Petitioner was in solitary confinement without direct access to legal assistance and material." (Id.) Petitioner states that a "review of the docket sheet in Case Numbers 12-F-77, 13-0778, 15-C-153, 18-C-161, and 21-0251 show that Petitioner was housed in the Special Housing Unit during the pendency of all proceedings from the indictment all the way through the habeas corpus appeal." (Id.) Petitioner asserts that when an inmate at MOCC is placed in segregation, "his access to legal assistance and materials is greatly diminished." (Id.) Petitioner explains that "the inmate must use a request form to ask that the Law Library provide him a copy of forms and legal material." (Id.) Petitioner acknowledges that the "Legal Request Form is extensive," but Petitioner complains that "one with no knowledge of the law would have no idea what to ask for in order to preserve the one-year statute of limitations for a State inmate to file a Federal challenge to his conviction and sentence." (Id.) Petitioner claims that a review of Operational Procedures and Policy Directives reveals that access to legal aide and material is inadequate for inmates placed in segregation. (Id., pp. 4 – 5.) Petitioner complains that "[a]lthough there is some guidance in the O.P.'s and P.D.'s regarding access to legal material and assistance for inmates in segregation, there

is no identifiable rules, plan, and/or outline for the exact seps to be followed to ensure access."
(Id., p. 5.) Petitioner asserts "[t]he very best identifier of the procedures for segregation inmates'
access to legal material is the Legal Request Form itself." (Id.) Petitioner acknowledges there are
"[t]wo inmate legal aides, one for each segregation unit, that research your Request and print-out
the material to be delivered by library staff three times per week." (Id.) Petitioner complains it can
take "weeks or months for requests to garner the proper material." (Id.) Petitioner further states
that even though "[s]egregation inmates can ask questions on the Legal Request Form, . . . if you
do not know anything about your Federal rights or the AEDPA, then you cannot ask about
something you do not know exists." (Id.) Citing Sossa v. Diaz, 729 F.3d 1235 (9th Cir. 2013),
Petitioner argues that equitable tolling is available where access to the legal material or the law
library is restricted. (Id., pp. 5 – 6.) Second, Petitioner argues that he "suffered ineffective
assistance of counsel when no attorney appointed by the State of West Virginia advised him that
there was a one year statute of limitations for seeking federal review of a state court conviction."
(Id., pp. 7 – 9.) Finally, Petitioner states that he "has been and is suffering from a debilitating
mental illness that causes him to have long bouts of severe depression." (Id., p. 10.) Petitioner also
states that he "suffered a traumatic brain injury when he was attacked during a small riot on the
prison rec yard." (Id.)

    In Reply, Respondent continues to argue that Petitioner is not entitled to equitable tolling.
(Document No. 20.) First, Respondent addresses Petitioner's claim that he is entitled to equitable
tolling because he was housed in solitary confinement from the time of his indictment and
continuing through his *habeas* appeal on his second State *habeas* petition. (Id., pp. 2 – 3.)
Respondent notes that Petitioner claims that "prison protocols, combined with a lack of knowledge
of AEDPA, prevented him from filing his section 2254 petition in a timely manner because he

lacked sufficient knowledge of what legal materials to request in the forms." (Id.) Respondent argues that "[t]hese excuses are insufficient to allow Petitioner to file over two years out of time as Petitioner must show more than alleged difficulties." (Id., p. 3.) Respondent claims that Petitioner has not met his burden of showing that MOCC's protocol for solitary confinement gave rise to "an extraordinary circumstances that warrants equitable tolling." (Id.) Specifically, Respondent states that "Petitioner's submission of exhibits outlining the protocols and procedures for accessing the law library while in solitary confinement do not show that Petitioner's ability to timely file his Petition was completely thwarted based on those rules." (Id.) Respondent notes that "[w]hile Petitioner claims his access to the law library was 'severely diminished' when compared to the general population, he does not allege he was prevented from having certain materials delivered to his cell; nor does he allege that these restrictions prevented him from accessing the legal files and papers from his underlying proceedings." (Id.) Respondent asserts that Petitioner fails to provide any "discernible reason why it was impossible for him to timely file his petition due to the prison's policies and procedures implemented to all solitary confinement inmates within the prison population." (Id., p. 4.) Respondent notes that "Petitioner filed his self-represented habeas corpus petition in the Circuit Court of Fayette County, Case No. 15-C-153, as well as his second habeas corpus petition in Case No. 18-C-161 and the subsequent habeas appeal in Case No. 21-0251 in the same restrictive housing circumstances as the current petition." (Id., pp. 6 – 7.) Respondent further argues that Petitioner's circumstances are disgustable from Sossa and Holland. (Id., pp. 4 – 6.) Second, Respondent argues that Petitioner's *pro se* "status alone does not excuse him from the statute of limitations." (Id., p. 7.) As to Petitioner's claim that trial and appellate counsel were ineffective in failing to inform him of the statute of limitations, Respondent argues that such a claim is without merit because state appointed counsel had no such duty. (Id., pp. 7 –

14

9.) Finally, Respondent argues that Petitioner's mere claim that he suffers from mental illness and a traumatic brain injury is insufficient. (Id., p. 9.) Respondent notes that Petitioner merely appears to be seeking sympathy and has failed to provide "any authority or support for the court to look further into this claim, or any authority suggesting mental illness is an external cause contemplated by Murray." (Id.)

The one-year limitation period may be subject to equitable modification in appropriate cases. See Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); Harris, 209 F.3d at 328-31. In Holland, the United States Supreme Court concluded that Section 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649, 130 S.Ct. at 2562; also see Harris, 209 F.3d at 330(petitioner bears the burden of proof regarding equitable tolling). Moreover, "[t]he word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2nd Cir. 2000)(citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed. 435 (1990). The doctrine of equitable tolling has generally been applied in two distinct situations. First, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to the respondent's wrongful conduct. Harris, 209 F.3d at 330. Second, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to circumstances beyond his control or "external to the party's own conduct." Id. The Harris Court made it clear that equitable tolling should rarely be allowed stating as follows (Id.):

15

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Harris, 209 F.3d at 330. The undersigned finds that Petitioner has neither established that he was acting with reasonable diligence nor presented "extraordinary circumstances" beyond his control to justify invoking the doctrine of equitable tolling.

First, Petitioner claims that he had restricted access to legal materials and legal assistance due to his placement in segregation "during the pendency of all proceedings from the indictment all the way through the habeas corpus appeal." Although Petitioner places significant weight upon Sossa v. Diaz, 729 F.3d 1235 (9th Cir. 2013), the factual circumstances of that case differs. Unlike the petitioner in Sossa, there is no allegation or indication that Petitioner's placement in segregation made it impossible for Petitioner to file a timely Section 2254 Petition. While solitary confinement does present an obstacle to filing a timely habeas petition, it generally does not qualify as an extraordinary circumstance. Hizbullahankhamon v. Walker, 105 F.Supp.2d 339, 344 (S.D.N.Y. July 31, 2000), aff'd, 225 F.3d 65 (2nd Cir. 2001). Prisoners familiar with the routine restrictions of prison life must take matters such as lockdowns, restricted library access, and transfers into account when calculating when to file a habeas petition. Atkins v. Harris, 1999 WL 13719, * 2 (N.D.Cal. Jan. 7, 1999); also see Allen v. Johnson, 602 F.Supp.2d 724, 727-28 (E.D.Va. 2009)(citation omitted)("[T]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.") In the instant case, Petitioner was clearly a prisoner "familiar with

the routine restrictions of prison life." Petitioner acknowledges he was subjected to segregation since the date of his indictment.[6] As Exhibits, Petitioner attaches copies of the WVDOC's Policies and Procedures regarding prisoners' access to legal assistance and materials when placed in segregation.[7] Petitioner further attaches a copy of the Legal Request Form, which Petitioner notes is "extensive." Although segregation may be an obstacle for a prisoner seeking legal materials and assistance, a review of the WVDOC's Policies and Procedures proves that prisoners in segregation do have access to legal materials and assistance during such placement. See Tucker v. Kingston, 538 F.3d 732, 755 (7th Cir. 2008)("[A] prisoner's limited access to the prison law library is not grounds for equitable tolling"); Jones v. Hulick, 449 F.3d 784, 789 (7th Cir. 2006)(denying equitable tolling where the petitioner was subjected to segregation and had limited access to the law library); Jumper v. Warden, 2016 WL 2893988, * 7 (D.S.C. April 25, 2016)(finding petitioner "is not entitled to equitable tolling during any period of solitary confinement); Gaylord v. Johnson, 2016 WL 1258432, * 3 (D.Md. March 31, 2016)("[C]ourts have found lockdowns are incidental to prison life and do not amount to extraordinary circumstances necessary to warrant equitable tolling."); Jones v. Bush, 2015 WL 1826408, * 4 (D.S.C. April 20, 2015)(finding that petitioner failed to established grounds for equitable tolling where he alleged that a lockdown status in his unit prevented him from accessing the law library); Gleaton v. Bush, 2014 WL 5527826, * 7 (D.S.C. Oct. 31, 2014)("Prison conditions, such as lockdowns or misplacement of legal papers, are not normally grounds for equitable tolling."); Garvin v. Eagleton, 2013 WL 3821482, * 13

---

[6] Petitioner was a seasoned prisoner prior to his indictment. The WVDOC's website indicates that Petitioner has been incarcerated since December 13, 2005, for his conviction in Case No. 05-F-1. Thus, Petitioner was a prisoner prior to his indictment in Case No. 12-F-77 for murdering a fellow inmate.

[7] Citing Hendon v. Lamarque, 2001 U.S. App. LEXIS 20768 (9th Cir. Sep. 20, 2001), Petitioner argues that he should be allowed to develop the record concerning equitable tolling. The undersigned notes that Petitioner has been given the opportunity to file a response and any exhibits and/or declarations in support of his claim for equitable tolling.

(D.S.C. July 23, 2013)("Petitioner's allegations regarding lack of resources in the law library do not constitute the type of extraordinary circumstances that justify equitable tolling because alleged inadequacies of prison law libraries do not toll the statute of limitations"); Fennell v. Artuz, 14 F.Supp.2d 374, 377 (S.D.N.Y. 1998)(equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research is not valid). Even assuming Petitioner's access to legal materials were restricted, Petitioner has failed to establish that acting with reasonable diligence he could not timely file his *habeas* petition due to such restricted access. See Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009)(finding that segregation and limited access to the law library "were neither extraordinary nor made it impossible for [petitioner] to file his petition in a timely manner"); United States v. Fredette, 191 Fed.Appx. 711, 713 (10th Cir. 2006)(finding that petitioner was not entitled to equitable tolling despite his transfer to as many as six different facilities because, even if petitioner was denied access to legal materials in violation of his constitutional right of access to the courts, he failed to show how the transfers affected his ability to file timely); Hendon v. LaMarque, 107 Fed.Appx. 769, 771 (9th Cir. 2004)(Although petitioner's prison time was "marked by frequent lockdowns and periods of administrative segregation, [petitioner] has failed to show that these events made it impossible for him to file on time."); Valverde v. Stinson, 224 F.3d 129, 134 (2nd Cir. 2000)("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."); Kirkman v. Lewis, 2019 WL 1297208, * 5 (D.S.C. March 21, 2019)(finding that the conditions surrounding a lockdown were insufficient to show impediment of diligent efforts by petitioner to file a timely Section 2254 petition); Jordan v. Johnson, 2010 WL 5462497, * 3 (E.D.Va. Dec. 29,

2010)(denying equitable tolling where it was evident petitioner submitted various correspondences with the court despite his alleged segregation). Notably, Petitioner fails to demonstrate how restricted access actually delayed or prevented him from completing the standard form available for filing a Section 2254 Petition. It is undisputed that Petitioner was able to file two *pro se* State *habeas* petitions during his placement in segregation. The law requires a petitioner to raise substantially similar federal constitutional claims in both state and federal courts. Thus, Petitioner could have and should have filed substantially the same claims in this Court as those raised in his State *habeas* corpus petition and appeal of the denial thereof. The undersigned notes that the claims asserted in Petitioner's instant Section 2254 Petition were asserted in his first *pro se* State *habeas* petition filed on June 5, 2015. Although it is clearly more difficult for a segregated inmate to access legal materials and legal assistance, a review of the policies, procedures, and record demonstrates that Petitioner could have prepared and timely filed his Section 2254 Petition. Therefore, Petitioner's claim for equitable tolling based upon his confinement in segregation is without merit.

Next, Petitioner argues he is entitled to equitable tolling based upon his lack of legal knowledge concerning the statutory limitations period and the alleged ineffectiveness of appointed State court counsel in failing to notify Petitioner of the same. The undersigned first notes there is no constitutional right to counsel in state post-conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Second, a misunderstanding of the statutory limitations period, no matter how innocent it may be, does not constitute "extraordinary circumstances" beyond Petitioner's control to justify equitable tolling of the limitations period. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)(a petitioner's *pro se* status and lack of knowledge of the law do not constitute extraordinary circumstances warranting equitable tolling); Cross-Bey v. Gammon, 322 F.3d 1012, 1215 (8th Cir. 2003)("Even in the case of an

19

unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)(holding that a mistake by a petitioner's counsel in interpreting the statute of limitations does not present the extraordinary circumstances necessary to invoke equitable tolling); Felder v. Johnson, 204 F.3d 168, 171-73 (5th Cir. 2000)(stating ignorance of the law is not a rare and exceptional circumstances that warrants equitable tolling); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999), cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999)(unfamiliarity with the legal process, illiteracy, and lack of representation do not merit equitable tolling); Bean v. Clarke, 2023 WL 3901804, * 4 (E.D.Va. June 8, 2023)(citing Rouse v. Lee, 339 F.3d 238, 249 (4th Cir. 2003))("Simple attorney error or incompetence during state habeas proceeding is not an extraordinary circumstances that warrant equitable tolling"); Lowe v. Ballard, 2011 WL 7042482, * 13 (S.D.W.Va. Nov. 18, 2011)("The petitioner's claim that he was not provided information concerning the running of the AEDPA statute of limitations is also not a basis for equitable tolling of the statute.") The undersigned, therefore, finds that Petitioner's above claim does not establish an entitlement to equitable tolling.

Finally, the undersigned considers Petitioner's claim that he "has been and is suffering from a debilitating mental illness that causes him to have long bouts of severe depression." Petitioner further states that he "suffered a traumatic brain injury" during a small prison riot. Besides his above conclusory statements, Petitioner fails to offer any factual details or medical records to support the foregoing. See Sosa, 364 F.3d at 513(citation omitted)("[F]ederal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity."); Chandler v. Clarke, 2023 WL 4203429, * 3 (E.D.Va. June 27, 2023)(denying equitable tolling based upon petitioner's claim of suffering from a medical condition and his

alleged need to rely on other prisoners for assistance). As explained above, the record indicates that Petitioner had the ability to file two *pro se* State *habeas* petitions despite his alleged "brain injury" and "severe depression." Accordingly, the undersigned cannot find that Petitioner is entitled to equitable tolling. See Egan v. Clarke, 2023 WL 7545230, * 4 (E.D.Va. Nov. 13, 2023)(finding no entitlement to equitable tolling where prisoner alleged lockdowns related to COVID-19 restricting his access to the law library, impaired cognitive thinking ability, lack of understanding or awareness of the limitations period, and the need to relying on other prisoners for legal assistance). Based upon the foregoing, undersigned respectfully recommends that Respondent's Motion to Dismiss Petition (Document No. 10) be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion to Dismiss Petition (Document No. 10), and **REMOVE** this matter from the docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: May 17, 2024.

Omar J. Aboulhosn
United States Magistrate Judge